[No. 1412.  Decided January 4, 1895.]

HARRY McDONALD ET AL., *Respondents, v.* TOWER LUMBER
    AND MANUFACTURING COMPANY, *Respondent,* THE
    BANK OF COMMERCE OF CENTRALIA, *Appellant.*

CHATTEL MORTGAGE—SUFFICIENCY OF DESCRIPTION—AFTER AC-
        QUIRED PROPERTY—VALIDITY.

A chattel mortgage upon lumber, which does not definitely locate
the lumber described, nor purport to cover all the lumber at the
localities specified, nor all that might be placed there, nor all that
the mill produced of a certain kind, and allows the disposal of the
mortgaged property, with no other condition than that other lumber
of equal value should be substituted in its place, is void for indefi-
niteness as against creditors and lien claimants.

*Appeal from Superior Court, Lewis County.*

*Edward F. Hunter,* for appellant.

*Leroy A. Palmer,* for respondent.

The opinion of the court was delivered by

Scott, J.—The Tower Lumber & Manufacturing Com-
pany was a corporation engaged in the manufacture and sale
of lumber at Centralia in this state.   While so engaged it
obtained a loan from the Bank of Commerce of Centralia,
for which it executed its promissory notes, and to secure the
same gave a chattel mortgage containing the following de-
scription :

"Three hundred thousand feet of sized lumber now lying
and being near the switch near the Gray's Harbor crossing
in Centralia, Washington ; 500,000 feet of common lumber
2x4 to 2x12-12 to 24 feet long lying in the mill yard of the
Tower Lumber and Manufacturing Co., Centralia, Wash.;
100,000 feet of 1x12 rough lumber 12 to 24 feet long, also in
mill yard ; 100,000 feet of 1x12 planed lumber 12 to 24 feet
long, also in mill yard ; 200,000 feet Nos. 1, 2 and 3 floor-
ing, ceiling, rustic and finishing lumber now in shed in
Tower Lumber Co.'s yard.   Also any and all other lumber
located in the yard of the Tower Lumber and Manufactur-

ing Co.  All of said lumber located in the two yards of the Tower Lumber and Manufacturing Co., at Centralia, Lewis county, Washington.''

Said mortgage also contained the provision that '' if any attempt be made to remove, dispose of or injure said property, or any part thereof, by any person whomsoever, without replacing the same with other lumber of equal value which shall take the place of the same and be covered by this mortgage,'' the mortgagee might take possession of the property and foreclose the mortgage.

The corporation thereafter becoming insolvent, a receiver was appointed who took possession of its property.  A number of suits were brought by its creditors, some of whom were laborers who sought to enforce lien claims against the lumber remaining undisposed of.  The Bank of Commerce claimed a prior lien upon the lumber by virtue of said mortgage, and sought to foreclose the same.  The decision being adverse to the mortgage claimants, this appeal was prosecuted.

We are of the opinion that the mortgage in question cannot be sustained as a lien upon the lumber, under the proofs in the case, as against such lien claimant and other creditors. Said mortgage was executed on the 15th day of December, 1891, the suit to foreclose it being commenced in the spring of 1893.  It was claimed on the part of appellant that some 350,000 feet of the original lumber in existence at the time the mortgage was executed still remained in the yard, but we do not think that this claim is sustained by the proofs. It will be observed that the mortgage did not in terms cover all the lumber in the yards of said lumber company at the time it was executed, there being two yards and it only purporting to cover all the lumber in one of them, and not specifying which one ; also the description is otherwise indefinite.

While oral proof might be admitted to sustain the mortgage as between the parties thereto, and while perhaps it might be sustained as between them by the proofs introduced, the appellant has failed to make out a case against

the other claimants.    It appears that during all of said times said lumber company was manufacturing lumber and selling it to various parties.    Some of it was shipped directly from the mill ; some was sold from the lumber piled in the yards and other lumber substituted therefor ; and it is impossible to determine from the proofs whether any of the lumber in existence at the time the mortgage was given remained in the yards with the exception of the bottoms of the former piles, or some of them.    Certainly a mortgage of the kind in question could not prevail against the liens of laborers, for when the lumber was cut no one could know what disposition would be made of it.    The mortgage would not attach to the lumber substituted for that sold until it had been placed at one of the places specified in the mortgage, if it would attach at all, which is doubtful, as against any other parties, as the mortgage did not purport to cover all the lumber at the localities specified ; nor all that might be placed there ; nor all that the mill produced, of a certain kind or otherwise.

We are satisfied with the finding of the lower court holding the mortgage invalid as against the other claimants, and the judgment is affirmed.

DUNBAR, C. J., and STILES and HOYT, JJ., concur.